UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

KEVING ALMY,

                Plaintiff,

v.

D. DAVIS, *et al.*,

                Defendants.

Case No. 2:12-cv-00129-RFB-VCF

**ORDER**

## I. INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 543. For the reasons discussed below, Defendants' Motion for Summary Judgment is granted.

## II. PROCEDURAL BACKGROUND

After mandatory screening pursuant to 28 U.S.C. § 1915A, Plaintiff Kevin Almy, proceeding pro se in this action, filed an Amended Complaint on April 4, 2012. ECF Nos. 6,9. Following a trial on the merits of some of Plaintiff's claims, two claims remain for adjudication: (1) an Eighth Amendment conditions of confinement claim against Defendants Tackett, Halling, Henley, Mattice and Warden Smith, and (2) a Fourteenth Amendment claim for deprivation of liberty without due process against Defendant Kennedy. ECF Nos. 9, 461. Defendants filed a Motion for Summary Judgment regarding these remaining claims on February 27, 2020. ECF No. 543. Plaintiff filed two motions for an extension of time to respond to Defendants' motion, which this Court granted. ECF Nos. 545-548. Plaintiff had until August 24, 2020 to file a response yet

failed to do so.  ECF No. 548.

**III.    FACTUAL ALLEGATIONS**

The Court finds the following facts undisputed in terms of this motion as Plaintiff has not filed a response to Defendants' motion.  This case is a pro se civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff was an inmate in custody of the Nevada Department of Corrections ("NDOC") at the time of alleged events, which occurred while he was housed at Warm Springs Correctional Center ("WSCC").

### a. Eighth Amendment—Conditions of Confinement

WSCC officials assigned Plaintiff to WSCC Unit 4B, cell 12 ("4B 12") on November 28, 2010 through December 2, 2010.  Plaintiff alleges that while he was in 4B 12 the temperatures were frigid.  Defendant Tackett was working Unit 4B at the time and did not perceive and was unaware of "frigid conditions" in cell 4B 12 during the relevant time period.  Defendant Mattice reviewed the daily management reports and maintenance records for Unit 4B for the relevant period and found no evidence to indicate cold temperatures in 4B 12 or a problem with Unit 4B's heating system.

During this period, Plaintiff had access to all the clothing and bed linens that he was entitled to.  Tackett provided Plaintiff with one orange jumpsuit, one mattress, one set of sheets, and one blanket.  Plaintiff was also able to obtain an additional blanket.  Plaintiff did not file a grievance regarding inadequate heat or "frigid" winter temperatures in 4B 12, although he filed grievances regarding other issues related to his time in segregation from late November to early December 2010.

### b. Fourteenth Amendment—Denial of Due Process

Plaintiff alleges that he spent 49 days in administrative segregation—43 days prior to his

Disciplinary Hearing and six days afterwards.  Plaintiff alleges that Defendant Kennedy made several procedural errors before, during, and after the Disciplinary Hearing.  On August 3, 2011, Plaintiff received Notice of Charges against him for his Disciplinary Hearing, which was more than 24 hours before his Hearing on September 11, 2011.  During the Hearing, Plaintiff was not allowed to call one witness due to relevancy and redundancy issues.  Plaintiff was denied legal counsel for the Hearing; his proposed legal counsels were two "legal-eagle friends," John Quintaro and Countryman; however, Plaintiff produced no evidence that they were Nevada-licensed attorneys.  After the Hearing, Plaintiff received a written statement of evidence relied upon and the reasons for taking disciplinary action against him.

### IV.     LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986).  When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.  Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). However, when the nonmoving party fails to file a point and authorities in response, the court can consider the facts undisputed for the purposes of the motion. Fed.R.Civ.P. 56 (e)(2); Heinemann v. Satterberg, 731 F.3d 914, 917 (9th Cir. 2013).  Failure of the moving party to respond to the motion alone is not sufficient to grant summary judgment under Local Rule 7-2(d). See Martinez v. Stanford, 323 F.3d 1178, 1182 (9th Cir. 2003).  Instead, the moving party must still meet its affirmative duty under Fed.R.Civ.P. 56 to demonstrate its entitlement to judgment as a matter of law. Id.  Therefore, this Court still must determine whether summary judgement shall be granted

on the merits.

## V. ANALYSIS

### a. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff has not exhausted administrative remedies with respect to his Eight Amendment claim against Defendants, Tackett, Halling, Henley, Mattice and Warden Smith, and thus cannot proceed with a § 1983 action against them. This Court agrees.

The Prison Litigation Reform Act (PLRA) requires that before bringing a § 1983 action, a prisoner must exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). For exhaustion to be proper, the prisoner must proceed through each step of the prison's grievance procedure. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing Woodford v. Ngo, 548 U.S. 81, 93 (2006)). The level of detail needed in a grievance to properly exhaust under the PLRA depends on the applicable grievance procedures of each individual prison. Jones v. Bock, 549 U.S. 199, 218 (2007). In the absence of a prison policy or procedure specifying a particular level of detail at which grievances must be stated, the Ninth Circuit has held that a grievance is sufficient for exhaustion purposes "if it alerts the prison to the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). Where an exhaustion defense is raised in a motion for summary judgment, disputed questions of fact should be resolved by the judge rather than the jury. Albino v. Baca, 747 F.3d 1162,1170–71 (9th Cir. 2014). "If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." Id. at 1171. "[T]he defendant in a PLRA case must plead and prove nonexhaustion as an affirmative defense." Albino, 747 F.3d at 1171.

NDOC Administrative Regulation (AR) 740 sets forth the grievance procedure applicable to Nevada inmates. There are three levels of grievances within AR 740: an Informal grievance (AR 740.08), a First–Level grievance (AR 740.09), and a Second–Level grievance (AR 740.10). Id. at 11-14. Inmates who are dissatisfied with a decision at a lower level may appeal the decision by filing a higher–level grievance. Once a decision on the merits has been rendered on a Second–Level grievance, the NDOC administrative grievance process is considered exhausted. AR 740 also provides the time frame in which a grievance must be filed and provides that an informal grievance must be filed within six months for issues involving personal injury, medical, or any other tort claims including civil rights claims.

Here, Defendants met their burden by showing that NDOC does have official policies for prison grievance procedures and there is no evidence on the record that Almy submitted any type of grievance regarding "frigid" temperatures in 4B 12. Although Almy did submit grievances regarding inadequate pain treatment while in 4B 12 none of them even remotely discuss being subject to "frigid" temperatures. Thus, even submitted grievances regarding Almy's conditions of confinement were insufficient to "alert the prison to the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120. Therefore, this Court finds that Plaintiff did not exhaust his administrative remedies as to his conditions and confinement claim.

### b. Deprivation of Due Process

Defendants argue that the time Plaintiff spent in disciplinary segregation does not constitute an atypical or significant deprivation of liberty and Defendant Kennedy did not violate Plaintiff's due process rights before, during, and after Plaintiff's Disciplinary Hearing. This Court agrees.

In order to state a Fourteenth Amendment due process claim, a plaintiff must adequately allege that he was denied a specified liberty interest and that he was deprived of that liberty interest

without the constitutionally required procedures. Swarthout v. Cooke, 562 U.S. 216, 219 (2011). Such interests may arise from the Constitution itself or from state law. When there is such a liberty interest or property interest, the only other issue is whether the plaintiff was deprived of that interest without the constitutionally required procedures. Id. at 861-63. Under the Due Process Clause, an inmate does not have liberty interests related to prison officials' actions that fall within "the normal limits or range of custody which the conviction has authorized the State to impose." Sandin v. Conner, 515 U.S. 472, 478 (1995) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)). The Clause also contains no embedded right of an inmate to remain in prison's general population. Id. at 485–86.

State law also may create liberty interests. Where segregated housing or other prison sanctions "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]" due process protections arise. Sandin, 515 U.S. at 483–84. What matters is not the particular label or characterization of the segregation or sanction, but instead, its "whether disciplinary confinement presents the type of atypical, significant deprivation in which a State might conceivable create a liberty interest." Id. at 486. When conducting the atypical-hardship inquiry, courts examine a "combination of conditions or factors. . . " Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996). These include: (1) the extent of difference between segregation and general population; (2) the duration of confinement; and (3) whether the sanction extends the length of the prisoner's sentence. See Serrano, 345 F.3d at 1078 (citing and discussing Sandin, 515 U.S. at 486–87). That a particular punishment or housing placement is more restrictive than administrative segregation or general population privileges is, alone, not enough. Rather, the Court must consider whether the conditions present an atypical hardship. See Sandin, 515 U.S. at 486 (noting that petitioner's disciplinary segregation although having significant amounts of lockdown

time was similar to those outside of segregation).

Plaintiff's due process claim is based on the fact that he spent 49 days in segregation for discipline resulting from a Disciplinary Hearing where Defendant Kennedy made numerous alleged procedural errors. Aside from the allegations in Plaintiff's complaint, Almy does not provide any evidence that his placement in segregation was atypical or significant. Moreover, it is unlikely that Almy's 49 days of segregation would be considered an "aytipical and significant hardship." See Brown v. Oregon Dept. of Corrections, 751 F.3d 983, 987-88 (9th Cir. 2014) (twenty-seven-month confinement in segregation without meaningful review imposed an atypical and significant hardship.)

Even if this Court were to assume Almy possessed a liberty interest in his placement in disciplinary segregation, the court also finds that Almy was afforded due process. A review of the notice of charges for the July 28, 2011 incident and the summary of the hearing for the notice of charges, shows that Almy was given a proper hearing before being sentenced to disciplinary segregation. Almy was served with the notice of charges within twenty-four hours of the hearing and he was given an opportunity to present evidence and call witnesses. See Wolff v. McDonnell, 418 U.S. 539, 563-70, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (outlining what prison officials must provide an inmate when a protected liberty interest exists, and inmate faces disciplinary charges). And although Almy was refused counsel despite his request, the refusal was proper. Id. at 556 (noting counsel is required only when the inmate is illiterate or the issues presented are legally complex). Accordingly, because the material facts do not demonstrate a deprivation of due process rights, this Court finds that Plaintiff's Fourteenth Amendment Due Process rights were not violated.

## VI. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [543] is GRANTED.

DATED: September 8, 2020.

   _____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**